3-0-9, 10-35, People v. State of Illinois, Appellee, Laura D'Amico v. Dino Bassett, Appellant, Brett Zietz Mr. Zietz Good afternoon, Your Honors. Counsel, may it please the Court. Since People v. Boots was decided more than 30 years ago, this Court has repeatedly recognized that a trial judge must clearly articulate on the record the specific reasons that he or she considered in deciding to shackle a defendant at trial. This requirement is in place because shackling a defendant is an extreme decision that should only be granted in extraordinary circumstances, where there is a manifest need to do so because shackling a defendant tends to prejudice the jury against the defendant, it restricts his ability to assist his counsel during trial, and it also offends the very dignity of the judicial process. In the absence of that manifest need, a defendant like Mr. Bassett has the right to stand trial with the appearance, dignity, and self-respect of a free and innocent man. In this case, Your Honors, the trial judge ruled that Mr. Bassett should be shackled, but he failed to articulate any specific reasons on the record as to why he should have been shackled. Notably, this issue is preserved because Mr. Bassett did object to being shackled, and his post-trial counsel included that specific issue in his motion for a new trial. So in light of that, this Court's precedent in People Martinez should apply, and this Court should hold that it was a due process error for the trial court to not comply with Booth's, and Mr. Bassett asks that the case should be sent back to the trial court for a new trial. I'm sure the prosecution will point out that Mr. Bassett was not, let's say, the easiest of clients for that defense counsel. It's unavoidable for us not to talk about the various threats that he, in fact, made to his counsel and to the trial judge himself, but it's also clear from the record that the trial judge didn't exactly credit those threats. In fact, the record is pretty clear that he characterized these threats as a ploy that Mr. Bassett was using to delay the proceedings, to get yet another attorney to represent him, and basically to, what the trial judge said, thwart the administration of justice. And then, even if this Court does hold that the record is obvious regarding these threats, that is just one of the Booth's factors. There's 13 of them, and this Court has held that a full and complete Booth's analysis is required, and the trial judge simply didn't do that here. The judge abused his discretion in ordering the Dino be shackled because none of the other factors even applied. There's no evidence that he was a violent person. He had no prior history of violent offenses. There was no evidence that he was an escape risk, that there was a security issue in the courtroom. None of those factors are anywhere on the record, and the trial judge never mentioned anything about those. And even just looking at the shackles themselves, leg shackles do nothing to prevent basically verbal outbursts or verbal threats. Shackles could prevent Mr. Bassett from trying to flee, and in that context, it makes sense. If he was a violent person, if it was a murder trial where there was evidence that he was going to try to flee, in those cases, this Court has said, well, that complies with Booth's. There's a nut there. Here, there's no specific articulation on the record, and two, even if this Court finds that it's obvious based on these verbal threats, that's just one of the 13 factors, and that's not enough. Now, this Court is obviously familiar in the past few years, instead of sending the case back for a new trial, there's been a more limited remedy that has come up where it's sent back for a retroactive Booth's analysis. Mr. Bassett's position is that that is contrary to the language in Booth's, and that the proper remedy is a new trial. There's no analogous constitutional violation where a reviewing court holds that there is a due process violation that's not subject to harmless error review, and then basically sends the case back for the trial judge to basically have another bite at the apple, basically a do-over. The time for the trial judge to make these Booth's findings was at the trial itself, or even in the context of the post-trial hearing, which happened in the Buss case, where here, the counsel who was appointed post-trial raised a specific issue. So, again, the judge had another chance there to make these Booth's findings and did it. So if this Court sends it back again for another Booth's hearing, it's basically the third chance that the trial court judge is getting to correct this constitutional error. If the Court has no questions about this specific issue, once again, Bassett respectfully requests that this Court find that there was a due process violation due to the trial court's failure to comply with Booth's, and should remand the case for a new trial as opposed to the limited remedy of a retroactive Booth's hearing. Going on to the second issue that's related to this issue is that Mr. Bassett's right to be present during a critical stage of his trial was also violated, where he was excluded from the in-camera discussion of preemptory challenges and challenges for cause, limited to that first panel of jurors who was impaneled. The record indicates that there were three different panels of jurors, and for the second and third panels, the record specifically indicates that the defense counsel asked the trial court if he can consult with Mr. Bassett about these preemptory challenges. And then he goes in the chambers and they do so. In contrast, with this first panel, where seven of the 11 jurors were picked, there is no indication on the record that Mr. Bassett was able to communicate his impressions of that first panel of jurors directly to his counsel before counsel retired in chambers with the prosecutor and the judge to do these preemptory challenges. Again, this issue is preserved, so this brings this case under the ambit of People v. Bennett. We don't have to prove plain error here, and People v. Bennett is a case that's essentially right on point here. The burden is on the state to prove that this error was, to prove beyond a reasonable doubt that this error didn't affect the outcome of the trial. Mr. Bassett argues that both his Illinois constitutional rights and his U.S. constitutional rights were violated by this, and the language is a little different, but both arguments basically boil down to the same thing. If Mr. Bassett was present in chambers during these discussions regarding preemptory challenges, could he have impacted the makeup of the jury? Just as in Bennett, the answer is yes. If anything, Mr. Bassett demonstrated that he was very vested in this case. He knew what was going on, and this court cannot say that he wouldn't have influenced the makeup of this jury. The language that this court used in Bennett is that if even just one out of the six that were at issue there, in this case it's seven jurors, and looking to other Illinois Supreme Court cases that deal with the right to have a say in preemptory challenges and People v. Boss and People v. Daniels, if that right is impaired, that's presumed to be prejudicial. The Bennett court looked to those cases to decide whether the right to be present in voir dire questioning, how that impacted that. Would you say the better practice when attempting to impanel a jury, when you have a shackled defendant, would be to have the panel of jurors removed from the courtroom and have the challenges and arguments presented there in the courtroom? That would most definitely be a much simpler solution to the problem, because in this case Mr. Bassett is shackled at the table, and that's an excellent suggestion. The jury could just leave, and then Mr. Bassett would be present with his lawyer to discuss these preemptory challenges and wouldn't have to shackle back and forth, and it would be clear on the record then. If that situation was in this case, then we wouldn't have this argument. We wouldn't be here right now. We're here because the record is silent. You'd be here on the shackling issue. We would be here on the shackling issue, yes, but we wouldn't be here on the similar issue. Do you have any difficulty with the second two panels? Pardon me? Do you have difficulty with the second two panels? No. I mean, it's not the ideal situation, but just looking at the language in Bennett's and then some of the language in Beam with their plain error analysis, there's, I mean, there was, it's clear from the record that defense counsel did in fact talk to Dean Oak regarding these preemptory challenges that were pertaining to the second and the third panel, but there's not that, there's no indication in the record that he spoke to defense counsel. So basically, it says that Mr. Bassett was not even there for the initial questioning of the first panel because he never got the chance then to relay that information to his counsel, and his counsel wasn't able to apply that. I thought he was there. He was physically in the courtroom during the initial questioning by the judge and follow-up questions. Right. But then there's no then indication that he spoke. Okay. I thought you said he wasn't there. No, no, I'm saying that in effect. Oh, yeah, I'm saying that in effect it's like he wasn't because without that chance to relay his impressions about those jurors to his counsel before counsel's I understand. Yeah. If the court doesn't have any more questions regarding this issue, based on both the trial court's boost error and also in light of the constitutional violation regarding Mr. Bassett's right to be present during the in-chamber's discussion of the challenges for cause and peremptory challenges, we respectfully ask this court to reverse its conviction and remand for a new trial. Thank you. Thank you very much. And Mr. – pardon me – Ms. DeMichael. May it please the court. Counsel. Lord DeMichael on behalf of the people. The trial judge acted within his discretion when granting the people's motion to shackle. Boost allows a defendant to be shackled where there's a reason to believe that he may pose a threat to the safety of the people in the courtroom or if it's necessary to maintain order during the trial. In the present case, the trial judge received much evidence that there was both a safety threat and it was necessary to maintain order during the trial. To highlight some of defendant's threatening and disruptive behavior, defendant had threatened everyone who came into contact with his case. He threatened the trial judge. He threatened the prosecutor and her family. He threatened defense counsel and his family. He had also tried to intimidate the victim, mailing out underlined copies of her psychiatric and medical records, which he had received in discovery. At previous proceedings, every time he was in court, the defendant argued with the trial judge and the attorneys and demonstrated persistent belligerence. He was on his third judge and fifth attorney, having threatened other attorneys. It doesn't, I mean, that may well be true, but doesn't the court have to have a little hearing about this and then make a decision outlining the reasons? I mean, it could have just had a hearing, recited all these things that you're reciting, and said, you know, this guy needs to be shackled. The trial judge did have- You can't just absorb this asthmatically and say, well, shackle him. The hearing did occur. The people made an oral motion to shackle. At that point, the people argued that defendant was trying to stall as long as possible, get his way, and if that doesn't work, disrupt the court, enforce a mistrial. The attorneys for both sides then discussed the issue further off of the record with the trial judge. It's true, this discussion should have been on the record. Public hearings. Right. But the purpose behind requiring that those reasons be stated on the record is to make sure that the trial judge isn't just deferring to the decision of the sheriff or deferring to a general policy, making sure there's a particular need to shackle this particular defendant rather than acting on, oh, I just let all felony defendants be shackled. And here, while the trial judge didn't specifically say, look, Booth Factor I, Booth Factor II, Booth Factor III, from the record we do have, which makes clear that this defendant is a safety threat and is a threat to disrupt the order in the courtroom, that record is sufficient to show that the reasons Booth allows shackling here were met. What cases do you have to support that that record is sufficient without the judge making findings? Well, the cases that send back for a new trial are cases in which the record shows just one factor or another factor. So if that record is clear enough to show that the judge abused his discretion by saying this is a felony defendant, then here, when it's so clear that the trial judge knows that this defendant is disruptive, that's clearly what he's acting under. Why is it clear? What did the trial judge say when he ordered him to be shackled? The trial judge said he's granting the people's motion, which was, again, based on defendant trying to stall and disrupt the court, and he said I'm going to allow the handcuffs to come off but the ankle shackles to remain on. No, what he did is he just ordered shackling, but what did he find? He just granted a motion, and what did he find? Are we to infer findings? His findings, he did not delineate his findings. Okay, so we don't know what he found. All we do know is he granted a motion that contained some allegations, and he ordered shackling. That's true, but based, again, on his disruptive behavior, I think it's pretty clear. We don't know what it's based on. Maybe it's based on the color of his eyes. Well, then the people would suggest that certainly no new trial is required. If the reasons aren't on the record and that makes the record incomplete, then the case could be sent back for a retrospective Booth hearing, as it was in Johnson and Buckner, where the reasons can be delineated and not on the record. At that point, the trial judge will be able to go through all the death threats we already know about, the fact that a defendant threatened the trial judge minutes before he granted the motion to shackle, threatened his counsel minutes before, also refused to change out of jail pose minutes before and argued with the trial judge over that and insisted he was not going to trial that day. So if this court finds that the record wasn't adequate, then the retrospective Booth hearing would be the efficient way to make it adequate. Regarding the right to be present issue, defendant was afforded his right to be present. The people do contend that this issue was forfeited because under Starks, where a defendant does not object to a jury selection procedure, he waives his right to be present issue. And in any case, the right to be present was in no way violated. The first panel seems to be where the dispute is at. Regarding the first panel, the record shows that the procedure that was going to be followed was that the trial judge and attorneys would question the jurors in court. Defense counsel would then communicate with his client about what challenges defendant wanted to exercise and then the challenges would be discussed in chambers. And this procedure was followed. Page 471 of the record really settles this issue because it shows that after questioning of the first panel, before the in-chambers discussions, defense counsel talked to defendant about challenges. And also record pages 1066 to 67, the defendant and his attorney had lengthy discussions about new challenges and discussed every single thing. The Bennett case doesn't apply because the problem in Bennett was... It somewhat seems in conflict with what the opposing counsel is saying about that first panel of seven jurors. There does seem to be a factual dispute, and I would point to page 471 of the record. I think it's very clear on that page that defense counsel is going to talk to defendant about those challenges, and that's in accordance with the procedure that the trial judge had said would be followed and that defendant agreed to. The Bennett case doesn't apply because in that case the jurors were questioned outside of defendant's presence. Let me go back just a minute. Did the defendant personally agree to that or just to his counsel? His counsel said that was fine. And it makes sense that he said that was fine because it preserved defendant's ability to personally observe every single juror. Defendant was present in court for the questioning of every single juror. And at that point he had the opportunity, which Bennett requires, to personally observe each juror as they're questioned, observe their answers to questions, their demeanor, and their tone of voice as they answer questions. I don't think that's what the opposing counsel is saying is the problem here. Not that he wasn't present, shackled there behind the table while that first panel was being bodiered or bodiered, however you want to pronounce it, but that he didn't have the opportunity to discuss it with his counsel. Now, I may be wrong, but I think he's trying to argue that counsel went into chambers with the state and presented their arguments in favor and against certain jurors. Well, Your Honor, I believe that defense counsel says the trial judge asked 471, would you like to take a moment and talk to your client or something along those lines, and defense counsel says yes. And then it shows that there is a break and then the in-chambers discussions follow. For the first panel. For the first panel. Okay. So I believe that that resolves this issue. And that's on 471? 471, yes. And they talk further in the post-trial hearing, 1066 and 67, about how defense counsel discussed, quote, every single thing with defendant before those in-chambers discussions. Are there any further questions? I guess not. Thank you, Your Honor. Thank you. Your Honor, counsel is referring to argument two. Counsel's reference to page 471 of the record is just general. There's a marked difference between the second panel and the third panel where the defense counsel specifically says he's going to talk to Mr. Bassett about these specific juror challenges and peremptories, whereas after the first one it's more general. And regarding her argument that this issue is not preserved, do you know he personally objected to being shackled throughout the trial. Wardeer is part of the trial, and his post-trial attorney did include that specific issue that he was shackled during the in-chambers discussions of these. So the issue is preserved. Even if this court finds that it's not preserved, then under Beam I think plein air would still apply under the second prong, because there is still some good language in Beam that talks about, again, the defendant's right to have an input into his peremptory challenges, and that's presumed to be prejudicial, and we have that here because the record is just not clear about any discussion that took place between defense counsel and Mr. Bassett about his impressions about this first panel of jurors. And again, the 7 of the 11 came from this panel. So even if this court chooses to look at this under Beam, under that plein air analysis, then there's still a constitutional violation. Thank you, Your Honors. All right. Thank you very much, Mr. Zeidman. Thank you both for your argument today. We will take this matter under advisement to get back to you with a written disposition.